MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:        2022 ME 33
Docket:          Yor-21-150
Argued:          January 11, 2022
Decided:         June 16, 2022

Panel:           STANFILL, C.J., and MEAD, JABAR, HORTON, and CONNORS, JJ.*

PAT DOE[1]

v.

RUDY A. LOZANO

STANFILL, C.J.

[¶1]   Rudy A. Lozano appeals from a judgment of the District Court (Biddeford, *Mulhern, J.*) determining that a settlement agreement that the parties signed constitutes a binding contract and granting Pat Doe's motion to enforce the agreement.  We clarify the standards courts should use in enforcing a settlement agreement, vacate the judgment, and remand for further proceedings.

---

\* Although Justices Gorman and Humphrey participated in the appeal, they retired before this opinion was certified.

[1]  Pursuant to federal law, we do not identify the plaintiff in this appeal referencing a protection from abuse action and limit our description of events and locations to avoid revealing "the identity or location of the party protected under [a protection] order." 18 U.S.C.S. § 2265(d)(3) (LEXIS through Pub. L. No. 117-130).

## I. BACKGROUND

[¶2]  In September 2018, Doe filed a complaint against Lozano for unjust enrichment and partition of real estate, alleging that she and Lozano had lived together for over seven years and that she was entitled to reimbursement or payment for multiple benefits she conferred upon Lozano during that time.  In November 2018, Doe filed with the court a settlement agreement, signed by both parties, which stated that the parties were previously in a personal and business relationship and sought to "resolve all issues of real and personal property, and any other legal rights" arising from that relationship.

[¶3]  The settlement agreement included a section regarding property described as "marital real estate" that provided that Lozano "shall purchase [Doe's] interest in the property" and listed payments that Lozano was to make, with the first payment due no later than November 1, 2018.  The settlement agreement also provided that Lozano "shall be entitled to a walk-through of the premises to ensure that the property is in a condition similar to that which existed on his last date of occupancy" and that the "agreement is conditioned upon the real estate and buildings thereon being in a satisfactory condition as mutually agreed" by the parties.  The settlement agreement stated that the parties agreed the civil action "shall be settled and agreed upon by submission

of this executed document to the court" and that Lozano agreed to "a default judgment in the full amount remaining that is due and owed" if he failed to "fulfill any of the commitments agreed upon" in the agreement.[2] Doe filed the settlement agreement with the court on November 6, 2018. The agreement was never incorporated into a judgment.

[¶4] Several months passed, and on April 22, 2019, Lozano filed an answer to Doe's complaint. Doe filed a proposed judgment two days later, contending that the settlement agreement resolved the issues between the parties. On August 12, 2019, the court (*Moskowitz, J.*) entered a pretrial order stating that the court had the settlement agreement in its file; that Lozano disagreed with Doe that the settlement agreement was a binding, enforceable, contract; and that Doe could move for summary judgment on that issue. Doe moved for summary judgment, and Lozano filed an opposition. Doe then moved for permission to withdraw her summary judgment motion and to amend her complaint to add a claim for breach of contract, which the court (*Foster, A.R.J.*) granted.

---

[2] Doe had also filed a complaint for protection from abuse in September 2018. The District Court (Biddeford, *Sutton, J.*) issued a temporary protection order on behalf of Doe and her two children and later issued a second temporary protection order. The settlement agreement stated that the protection from abuse action "shall be dismissed with prejudice," and the court (*Moskowitz, J.*) granted Doe's motion to dismiss the protection from abuse complaint in November 2018.

[¶5]  Doe did not amend her complaint in the District Court but filed a complaint against Lozano in the Superior Court (York County) for breach of contract and promissory estoppel.  The Superior Court (*Douglas, J.*) stayed that case pending further action of the District Court.

[¶6]  On August 17, 2020, Doe moved to "enforce" the settlement agreement in the District Court, arguing that Lozano had failed to make any payments due to Doe under the agreement.  Unlike the withdrawn motion for summary judgment, Doe did not support her motion to enforce with any affidavits or other material of evidentiary quality.  Lozano opposed the motion, raising the following defenses: that he entered into the agreement under duress due to the pending protection from abuse action; that he was mentally incapacitated when he signed the agreement; that Doe fraudulently induced him to enter into the agreement by concealing the results of an appraisal of the real property, which concluded that the property was worth considerably less than Lozano believed; that the agreement was not enforceable because both parties knew that the description "marital real estate" was a mistake; that he was not given a chance for a "walk-through of the premises" and the property was not in a condition similar to the condition it was in on the last date that he occupied it; and that a condition of the agreement—that the property be in a

satisfactory condition—is ambiguous and was not met. Lozano argued that an evidentiary hearing on the motion to enforce was required as a matter of due process and that discovery was necessary before a hearing could be held.[3]

[¶7]   Despite Lozano's request for an evidentiary hearing, the court (*Mulhern, J.*) held a nontestimonial hearing on November 24, 2020. Based on the parties' arguments and the settlement agreement, on March 24, 2021, the court entered a judgment granting in part Doe's motion to enforce. The court determined that the settlement agreement is an enforceable contract with sufficiently definite terms and that the agreement's material terms "are not in dispute, so no evidentiary hearing needs to be conducted." The court rejected Lozano's argument regarding mutual mistake, stating that it had "not been presented any facts that indicate that at the time of the signing . . . the parties were under the mistaken belief that they were married" and that the language "marital real estate" was "a simple clerical error." The court found that the settlement agreement contained "detailed terms and multiple affirmations of intent"; that the parties used attorneys to negotiate the agreement, affirmed "their intent to a notary," and had the agreement notarized; and that the

---

[3]  The court (*Mulhern, J.*) stayed all discovery in the matter, stating that the granting of the motion to enforce "would conclude the case without the need for further discovery."

6

notarized agreement was submitted to the court. The court determined that, as a result, the parties intended to be bound by the agreement.

[¶8] Finally, the court concluded that there were no grounds to void the settlement agreement. The court determined that Doe had "performed significant partial performance" under the agreement, that Lozano accepted that performance and "stayed silent and did not indicate to [Doe] that he would challenge" the agreement, and that therefore Lozano could not claim the settlement agreement was void. The court rejected Lozano's arguments with respect to the unsatisfactory condition of the property, duress, incompetence, and fraud because it determined that Lozano waived "any objection to the condition of the property" when he moved back into the property and accepted and recorded the quitclaim deed to the property and that he "ratified the agreement by his subsequent conduct." The court thus approved the settlement agreement, determined that Doe was entitled to enforce the agreement with respect to the amount Lozano owed for the real property, and entered a judgment of $80,002 for Doe.[4]

---

[4] The court denied Doe's request for enforcement of the agreement regarding the value of personal property because the claim was "not for a definite amount." The court also denied all outstanding motions, including Lozano's motion for relief and sanctions pursuant to M.R. Civ. P. 37, motion for a protective order regarding discovery, motion in limine, and motion to test the sufficiency of Doe's answers to Lozano's requests for admissions.

[¶9]  Lozano moved for further findings of fact, which the court denied. Lozano timely appealed.[5]

## II.  DISCUSSION

[¶10]  Lozano argues that the court improperly reached conclusions on questions of fact "without allowing exhibits, taking evidence or otherwise weighing fact" and that it violated his "due process rights to test the evidence."[6] Doe contends that the court did not need to hold an evidentiary hearing on her motion to enforce because "there was no genuinely disputed question of material fact regarding the existence or unambiguous terms" of the settlement agreement.[7]

---

[5]  On March 11, 2022, Lozano filed a motion requesting that we decide his appeal without referring to the protection from abuse matter, a motion which Doe opposed.  We accepted the motion and opposition as additional briefing in considering the merits of Lozano's appeal.

[6]  We reject Lozano's argument that Doe is collaterally estopped from pursuing the motion to enforce because she did not amend her complaint to assert a claim for breach of contract.  Lozano has waived this argument because he did not develop it or offer case law in support of it.  *See Mehlhorn v. Derby*, 2006 ME 110, ¶¶ 9, 11, 905 A.2d 290; Alexander, *Maine Appellate Practice* § 404 at 316 (5th ed. 2018).  Regardless, his argument fails because there was no final judgment with respect to these issues.  *See Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 9, 940 A.2d 1097.

[7]  We reject Doe's argument that Lozano failed to properly raise and develop any issues relating to his due process argument.  Lozano argued, in his opposition to Doe's motion to enforce, that failing to hold an evidentiary hearing would violate his due process rights and, during the nontestimonial hearing, Lozano also raised the court's need to take evidence.  The court specifically contemplated whether Lozano's due process rights would be preserved without an evidentiary hearing.  There was thus "a sufficient basis in the record to alert the court" and Doe of this issue.  *Warren Constr. Grp., LLC v. Reis*, 2016 ME 11, ¶ 9, 130 A.3d 969 (quotation marks omitted); Alexander, *Maine Appellate Practice* § 402(a) at 310 (5th ed. 2018).

[¶11]   We review "de novo whether an individual was afforded procedural due process." *Mitchell v. Krieckhaus*, 2017 ME 70, ¶ 16, 158 A.3d 951 (quotation marks omitted). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* ¶¶ 16, 20 (quotation marks omitted).  Furthermore, "[w]hen significant rights are at stake, due process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial fact-finder." *Jusseaume v. Ducatt*, 2011 ME 43, ¶ 12, 15 A.3d 714 (quoting *GENUJO LOK Beteiligungs GmbH v. Zorn*, 2008 ME 50, ¶ 18, 943 A.2d 573).

[¶12]  We have previously "implicitly endorsed motions to enforce as appropriate vehicles by which parties may bring an alleged settlement agreement before a trial court," and we have broadly stated that whether a court must hold an evidentiary hearing on a motion to enforce is ordinarily within the court's discretion. *Est. of Snow*, 2014 ME 105, ¶ 18, 99 A.3d 278; *see* M.R. Civ. P. 7(b)(7).  We have not, however, always clearly articulated standards to determine when an evidentiary hearing may be necessary, nor have we clearly articulated the court's power to enforce a settlement agreement upon such a motion.  We do so now.

## A. Contract Formation

[¶13] A settlement agreement is analyzed as a contract and the existence of a binding settlement agreement is a question of fact reviewed for clear error. *2301 Cong. Realty, LLC v. Wise Bus. Forms, Inc.*, 2014 ME 147, ¶ 10, 106 A.3d 1131; *Est. of Snow*, 2014 ME 105, ¶ 11, 99 A.3d 278. For a binding agreement to exist, "the parties must have mutually intended to be bound by terms sufficiently definite to enforce." *2301 Cong. Realty, LLC*, 2014 ME 147, ¶ 10, 106 A.3d 1131 (quotation marks omitted).

[¶14] "[W]here parties read a settlement agreement that contains all the necessary elements of an agreement into the court record, no further fact-finding is required." *Est. of Snow*, 2014 ME 105, ¶ 19, 99 A.3d 278 (summarizing cases); *see, e.g.*, *Muther v. Broad Cove Shore Ass'n*, 2009 ME 37, ¶¶ 2, 8, 968 A.2d 539 (explaining that the transcript of the judicially assisted settlement conference "conclusively establishes the existence of a binding settlement agreement . . . and subsequent disputes that arose while attempting to reduce the settlement to a stipulated judgment did not affect" the court's authority to enforce the agreement). Further, in *Estate of Snow*, we affirmed a court's determination that no evidentiary hearing was necessary where the parties read the details of a settlement agreement into the record at a

deposition.  2014 ME 105, ¶¶ 5-7, 21-22, 99 A.3d 278.  Although the parties later failed to agree on written language reflecting the agreement, they did not dispute the accuracy or authenticity of the deposition transcript submitted to the court, which the court properly found reflected an unambiguous binding settlement agreement.  *Id*. ¶¶ 7, 21; *see also 2301 Cong. Realty, LLC*, 2014 ME 147, ¶ 10, 106 A.3d 1131.

[¶15]  If, however, the parties dispute the existence of an enforceable settlement reached outside the court's presence, "findings of fact regarding the terms of the agreement and the parties' intent may be required."  *Muther*, 2009 ME 37, ¶ 6, 968 A.2d 539.  For example, in *Marie v. Renner* we held that an evidentiary hearing was necessary to determine whether the parties reached a binding settlement agreement.  2008 ME 73, ¶ 10, 946 A.2d 418.  The plaintiff had sued in that case alleging that the renovation work to the defendant's building had caused her to have an allergic reaction and incur medical bills.  *Id*. ¶ 2.  Prior to trial, the court was notified that the parties had settled the case, and the plaintiff filed a motion to enforce, arguing that a binding contract existed, "namely, in exchange for a release of all claims, [defendant] would prepare and tender a check," and that a hearing was unnecessary because the filings with the court disclosed this agreement.  *Id*. ¶¶ 3, 6.

[¶16]   The defendant contended that his agreement to settle was conditioned on the proceeds "being used to pay [plaintiff's] outstanding medical bills" and, because the medical provider had written off those bills, the settlement agreement's terms were not met.  *Id.* ¶ 3.  We determined that the parties' filings, including documents signed by only one party and correspondence between counsel, did not reflect a binding settlement agreement but instead revealed an ambiguity that went "to the substance of the agreement" regarding whether "there was a condition precedent to the agreement as to the use of the proceeds of the check."  *Id.* ¶¶ 8-9.  We therefore vacated the court's judgment and remanded the matter for an evidentiary hearing.  *Id.* ¶ 10; *see also White v. Fleet Bank of Me.*, 2005 ME 72, ¶¶ 3 & n.2, 5, 12-13, 875 A.2d 680 (affirming the enforcement of a settlement agreement reached during mediation, where the mediation was not recorded due to a tape recorder malfunction and the court held an evidentiary hearing).

[¶17]   While the above cases are instructive, here the parties' dispute regarding the settlement agreement is not limited to whether an agreement was reached outside of the court and what the material terms of that agreement are.  The parties both signed the settlement agreement and Doe filed it with the court.  The agreement on its face appears fully integrated.  Under principles of

12

contract law and the parol evidence rule, extrinsic evidence is not admissible to explain or alter an unambiguous integrated contract. *See Handy Boat Serv., Inc. v. Pro. Servs., Inc.*, 1998 ME 134, ¶ 11, 711 A.2d 1306.

[¶18] In this case, however, Lozano contended and argues on appeal that the agreement is invalid because of the circumstances leading up to the agreement's signing. Specifically, he claims that he was under duress due to Doe's pending action for protection from abuse and was mentally incapacitated at the time of signing,[8] and that Doe fraudulently induced him to enter the agreement. These arguments go to the validity of the agreement's formation, not to the terms of the agreement.

[¶19] A party asserting the defense of fraudulent inducement may use parol evidence to show that the other party engaged in fraudulent representations to induce the party to enter a settlement agreement. *See Ferrell v. Cox*, 617 A.2d 1003, 1006 (Me. 1992); *Harriman v. Maddocks*, 518 A.2d 1027, 1029 (Me. 1986). Such evidence may show that the signed settlement agreement does not reflect the intent of the parties, *Ferrell*, 617 A.2d at 1006, and may vitiate the contract, *Harriman*, 518 A.2d at 1029.

---

[8] Lozano notes that Doe herself asserted in her complaint for protection from abuse that Lozano was mentally ill and delusional.

[¶20]  In addition, a contract is voidable if a contracting party does not have the requisite mental capacity to contract.  *See Est. of Marquis*, 2003 ME 71, ¶ 14, 822 A.2d 1153.  The determination of a party's contractual capacity is necessarily a question of fact.  *See id.* ¶ 16.  Similarly, duress founded upon wrongful conduct of the other party is a factual question that may also invalidate a contract.  *See City of Portland v. Gemini Concerts, Inc.*, 481 A.2d 180, 182-83 (Me. 1984).

[¶21]  As we have previously explained, *see Est. of Snow*, 2014 ME 105, ¶ 20, 99 A.3d 278, the First Circuit has determined that courts "may not summarily enforce a purported settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement" and must instead "take evidence to resolve the contested issues of fact," *Malave v. Carney Hosp.*, 170 F.3d 217, 220, 222 (1st Cir. 1999) ("Summary enforcement of arm's-length settlements is a useful device to hold litigants to their word, but the procedure ought to be reserved for situations in which a struck bargain is admitted or proved, and the basis for nonperformance is insubstantial.").  In *Malave*, the First Circuit held that an evidentiary hearing was necessary when a party disputed whether its attorney had authorization to settle the case.  *Id.* at 219, 221-22; *see also Lane v. Maine Cent. R.R.*, 572 A.2d

14

1084, 1084-85 (Me. 1990). An evidentiary hearing can similarly be necessary to determine whether a party had the mental capacity to enter into an agreement. *See Marston v. United States*, No. 10-10437-GAO, 2012 U.S. Dist. LEXIS 29140, at *10-12 (D. Mass. Mar. 6, 2012). The same is true as to improper coercion. *See Bandera v. City of Quincy*, 344 F.3d 47, 52 (1st Cir. 2003) (stating that it was unlikely that the matter could be resolved absent an evidentiary hearing where there were issues of fact, including whether the plaintiff was "improperly coerced into signing the [settlement] agreement").

[¶22] We now make clear that if a party raises a factual issue that goes to the validity of a settlement agreement's formation, an evidentiary hearing will ordinarily be necessary on a motion to enforce the settlement, even if the written agreement otherwise appears to be a fully integrated contract.[9] Because issues of fact regarding the formation of the settlement agreement exist here and no such hearing was held, we must vacate the judgment.

---

[9] We do not suggest that these factual issues, as with any factual issues, cannot be resolved upon a properly supported motion for summary judgment. Such a motion was filed in this case but then withdrawn. Summary judgment remains available when there are no genuine issues of material fact. M.R. Civ. P. 56(c). Similarly, as the First Circuit has noted, "[p]arties are perfectly free to submit issues for resolution on whatever limited evidence they choose to present." *F.A.C., Inc. v. Cooperativa de Seguros de Vida de P.R.*, 449 F.3d 185, 188, 194 (1st Cir. 2006) (determining that the lack of an evidentiary hearing was not problematic where a party did not properly raise that a hearing was requested and did not argue "that the failure to hold an evidentiary hearing was error," and where the court was familiar with the issues because it had participated in the settlement negotiations).

**B.      Enforcement Remedy**

[¶23]  In her motion to enforce, Doe sought not only a declaration that the settlement agreement was valid and entry of judgment thereon, but she also sought remedies for breach of the substance of the agreement.  In response, in addition to claiming that the contract was void or voidable, Lozano raised other issues that may be defenses, in whole or in part, to an action for breach of contract.  In this regard, the court again erred by determining factual issues regarding performance, breach, and remedies without receiving any evidence.

[¶24]  On a motion to enforce a settlement agreement, the court may determine that an agreement is enforceable as a full and final agreement.  A court will ordinarily enforce a settlement agreement by entering a judgment in accordance with the agreement, whether by dismissing the action or incorporating the agreement's terms into a judgment.  *See, e.g.*, *Muther*, 2009 ME 37, ¶ 7, 968 A.2d 539 (stating that a valid settlement agreement is enforceable "and, upon acceptance by the court, is incorporated as a judgment of the court"); *Toffling v. Toffling,* 2008 ME 90, ¶¶ 8-9, 953 A.2d 375 ("[A]n oral stipulation entered on the record at trial is adequate to support the entry of a judgment finally disposing of the litigation." (quotation marks omitted)); *White*, 2005 ME 72, ¶ 8, 875 A.2d 680 (explaining that once the court determined that

the parties had a binding settlement, the court issued an order adopting and enforcing the settlement's terms); *Page v. Page*, 671 A.2d 956, 958 (Me. 1996) (stating that a "settlement agreement can be summarily enforced by the entry of a judgment"); *Transamerica Com. Fin. Corp. v. Birt*, 599 A.2d 65, 65 (Me. 1991)*.*

[¶25]   The determination that a settlement agreement was validly formed with sufficiently definite terms and is entitled to enforcement as a judgment, however, is separate from a determination of whether a party is in breach of the settlement agreement and the remedies therefor.  In this case, the court's judgment was not limited to entry of a judgment based on the settlement agreement.  After determining there was a valid agreement, the court went on to determine that Doe had "performed significant partial performance" of the agreement; that Doe had "upheld her obligations under the contract"; that Lozano had remained silent and did not indicate he would challenge the agreement; that Lozano had "defaulted" under the agreement; that Lozano had waived his defenses; that Doe was entitled to a judgment of

$80,002; and that Doe was entitled to request attorney's fees—all without relying on any competent evidence or other factual record.[10]

[¶26]  As stated above, Doe originally moved for summary judgment regarding the settlement but then withdrew her motion.  She was given permission to amend her complaint to add a claim for breach of contract but never did so.  She filed a separate Superior Court complaint against Lozano for breach of contract and promissory estoppel, but that case was stayed pending further proceedings in the District Court.  Any of those procedural mechanisms would be acceptable ways to resolve her allegations of breach of the settlement agreement.  What could not be done, however, was entry of a judgment against Lozano on a motion to enforce without any hearing or other factual record.

The entry is:

> Judgment vacated.  Remanded for further
> proceedings consistent with this opinion.

---

[10] To be clear, Doe's motion to enforce was not under oath and did not include or rely on any affidavits or other filings that might arguably provide a factual basis for the court's findings.

Daniel D. Feldman, Esq. (orally), Law Office of Daniel Feldman, Yarmouth, for appellant Rudy A. Lozano

Fred W. Bopp III, Esq. (orally), Bopp & Guecia, Yarmouth, for appellee Pat Doe

Biddeford District Court docket number CV-2018-290
FOR CLERK REFERENCE ONLY